**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **YESICA DINORA ALVAREZ-DIAZ**; **ANYELI NATALIA ABREGO-ALVAREZ**,<br><br>Petitioners,<br><br>v.<br><br>**TODD BLANCHE**, Acting Attorney General of the United States; **MARKWAYNE MULLIN**, Secretary of the Department of Homeland Security; **DAVID VENTURELLA**, Acting Director of Immigration Customs Enforcement; **JULIO HERNANDEZ**, Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations; **BRUCE SCOTT**, Warden of Northwest ICE Processing Center**,**<br><br>Respondents. | Case No. 3:26-cv-1625-SI<br><br>Agency Nos. A206-629-104<br>A206-629-105<br><br>**ORDER** |

**Michael H. Simon, District Judge.**

Petitioners Yesica Dinora Alvarez-Diaz and Anyeli Natalia Abregoalvarez S-M-M, ("Petitioners") are noncitizens. Ms. Alvarez-Diaz is approximately 36 years old and Ms. Abrego-

Alvarez is approximately 18 years old.[1] They entered the United States on March 9, 2014. Petitioners applied for asylum and their application was denied. They were ordered removed on December 1, 2015. Petitioners appealed the denial of their asylum application and the appeal was dismissed on May 4, 2017.

Ms. Alvarez-Diaz married a United States citizen on May 28, 2022. On August 15, 2023, her husband filed I-130s, Petitions for Alien Relatives, for Petitioners. Petitioners' I-130 interviews are scheduled for August 5, 2026, with the USCIS Field Office in Portland, Oregon.

Now before the Court is a Petition for Writ of Habeas Corpus ("Petition"). ECF 1. Petitioners also filed a Motion for Temporary Restraining Order. ECF 1-4. Petitioners allege that they are in constructive custody of the United States because they are subject to a removal order. They also contend that based on recent conduct by Defendants, they have a reasonable belief that Defendants will detain, and likely deport, Petitioners when they appear for their interview on August 5, 2026. They allege that doing so would be a violation of their Fifth Amendment right to Due Process. Petitioners contend that detaining and deporting them would be based not on an determination of their individual circumstances but instead to comply with perceived general instructions from President Donald J. Trump, and without the required hearing. It also would preemptively terminate their motion to reopen their deportation proceedings.

The Court generally has jurisdiction over habeas petitions. *See* 28 U.S.C § 2241(a); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2 and stating that "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States"). Moreover, "a federal court always has jurisdiction to

---

[1] Petitioners' filing state their ages as of March 9, 2014, when they entered the United States, but not as of their filing.

determine its own jurisdiction," including its own subject-matter jurisdiction. *Brownback v. King*, 592 U.S. 209, 218-19 (2021) (quoting *United States v. Ruiz*, 536 U.S. 622, 628 (2002)). To give a court a reasonable opportunity to determine whether it has subject-matter jurisdiction and whether venue is proper in a district, and if so to consider the validity of a habeas petition, a court may order the preservation of the status quo. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947) ("[T]he District Court ha[s] the power to preserve existing conditions while it . . . determine[s] its own authority to grant injunctive relief," unless the assertion of jurisdiction is frivolous.). Such an order remains valid unless and until it is overturned, even when the issuing court lacks subject-matter jurisdiction to determine the underlying action's merits. *See id.* at 293-94. This principle applies with even greater force when the action a court enjoins would otherwise destroy its jurisdiction or moot the case. *See Garcia v. United States Customs & Border Prot.*, 2021 WL 4815945, at *6 (C.D. Cal. Aug. 20, 2021) ("[E]quity requires that his case not be rendered moot before it has begun. A preliminary injunction against his continued accrual of unlawful presence is appropriate as it merely maintains the status quo pending resolution of his underlying claims.").

Under the All Writs Act, 28 U.S.C. § 1651, the Court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Even if the Court's jurisdiction over Petitioners' claim may be subject to dispute by Respondents, which has not yet been determined, "[a] federal court has the power under the All Writs Act to issue injunctive orders in a case even before the court's jurisdiction has been established." *See ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 n.19 (5th Cir. 1978); *see also Belbacha v. Bush*, 520 F.3d 452, 455-56 (D.C. Cir. 2008) ("If a case presents a 'substantial' jurisdictional question, then under the All Writs Act, 28 U.S.C. § 1651, a district court may act to preserve its jurisdiction while it determines whether it has jurisdiction."). Accordingly, the Court

may "issue status quo orders to ensure that once its jurisdiction is shown to exist, the court will be in a position to exercise it." *See ITT Cmty. Dev.*, 569 F.2d at 1359 n.19[2]

Petitioners' interview hearing comes amidst important context. In May 2025, then-DHS Secretary Kristi Noem set an arrest quota for ICE and other federal agencies of 3,000 migrants per day. *See* Julia Ainsley, et al., *A sweeping new ICE operation shows how Trump's focus on immigration is reshaping federal law enforcement,* NBC NEWS (June 4, 2025), https://www.nbcnews.com/politics/justicedepartment/ice-operation-trump-focusimmigrationreshape-federal-lawenforcement-rcna193494; Brittany Gibson & Stef W. Kight, *Scoop: Stephen Miller, Noem tell ICE to supercharge immigration arrests*, AXIOS (May 28, 2025), https://www.axios.com/2025/05/28/immigration-ice-deportations-stephen-miller; Sean Hannity, *Stephen Miller says the admin wants to create the strongest immigration system in US History*, FOX NEWS (May 28, 2025),

[2] Courts around the country exercise their authority under the All Writs Act to maintain their jurisdiction over pending immigration matters by preserving the status quo. *See, e.g.*, *J.A.V. v. Trump*, 780 F. Supp. 3d 705, 708 (S.D. Tex. Apr. 24, 2025) (enjoining respondents under the All Writs Act from "transferring, relocating, deporting, or removing" any petitioner outside of the Southern District of Texas because "maintaining the status quo is required to afford the Court the ability to consider the request for a preliminary injunction and other forms of relief . . . and to prevent the immediate and irreparable injury that may occur with the immediate removal of any [petitioner]"); *Du v. U.S. Dep't of Homeland Sec.*, 2025 WL 1317944, at *1-2 (D. Conn. Apr. 24, 2025) (enjoining defendants from removing and deporting any plaintiffs from the District of Connecticut in order to preserve the status quo and maintain the court's jurisdiction over the case pending ruling on the motion); *Doe v. Bondi*, 2025 WL 1870979, at *1-2 (S.D. Cal. June 11, 2025) (explaining that "[f]ederal courts retain jurisdiction to preserve the status quo while determining whether [they have] subject matter jurisdiction over a case and while a petition is pending resolution from the court" and finding that "a limited-duration stay to maintain the *status quo* is appropriate because it will allow the Court to hold a hearing and provide a reasoned decision to the request at hand"); *Batooie v. Ceja*, 2025 WL 1836695, at *2 (D. Colo. July 3, 2025) (enjoining defendants from removing the petitioner from the District of Colorado pursuant to the All Writs Act and Rule 65(b) of the Federal Rules of Civil Procedure in order to preserve the court's jurisdiction); *E-C-R- v. Noem*, 2025 WL 2300543, at *1-2 (D. Or. July 16, 2025) (enjoining the same with respect to a plaintiff from the District of Oregon).

https://www.foxnews.com/video/6373591405112. Subsequently, Respondents launched an immigration enforcement operation in Oregon that set an apparent quote of eight arrests per day per team of enforcement agents. *See e.g.*, Transcript of Evidentiary Hearing at 259:25-261:12, *M-J-M-A v. Hermosillo*, No. 6:25-cv-02011-MTK (D. Or. Dec. 3, 2025), Dkt. No. 55. The administration's focus on mass deportations has not wavered.

Additionally, Respondents have terminated roughly one seventh of the Department of Justice's immigration judges. *See* Emily Ngo, *Immigration courts thrown into chaos as Trump administration purges dozens of judges*, POLITICO (Dec. 6, 2025), https://www.politico.com/news/2025/12/06/trump-immigration-court-judge-purges-00679376?cid=apn. "Atypically, the Department of Homeland Security has taken an active role in recruiting their replacements, which they style as 'deportation judges' in their recruiting advertisements." *A.M.H. v. Hermosillo*, 2026 WL 446498, at *2 (D. Or. Feb. 17, 2026). "Moreover, at least in Portland, these judges—officially employees of the Department of Justice—work in courts that display DHS posters encouraging individuals to 'self-deport' and including depictions of apparent Hispanic migrants being arrested by government agents." *Id.*

Given Respondents' sweeping policy of detaining noncitizens regardless of pending immigration filings, Respondents' apparent transitioning of immigration courts to "deportation courts," and Respondents recent conduct in swiftly relocating immigrants across state lines, the Court finds that Petitioners have shown a reasonable likelihood that they will be detained at their August 5, 2026 interview and removed from Oregon. If Petitioners are arrested or detained for immigration purposes, they would likely quickly be transferred out of the District of Oregon because there is no immigration detention center in Oregon. If Petitioners were transferred out of the District of Oregon, it could potentially create jurisdictional problems over Petitioners' habeas case. Thus, the Court finds that it is necessary in aid of its jurisdiction that Petitioners not be

transferred out of the District of Oregon or deported, at least until the parties have litigated the merits of Petitioners' Petition. The Court denies as moot Petitioners' temporary restraining order under Rule 65 of the Federal Rules of Civil Procedure, because the relief granted under the All Writs Act is sufficient at this stage of the litigation. Petitioner may file a motion for preliminary injunction or renewed motion for TRO, if necessary and appropriate.

## CONCLUSION

The Court ORDERS Respondents not to arrest, detain, or deport Petitioners based on their immigration status during the pendency of this case, absent further order of this Court. This Order is without prejudice to the Court considering the merits of parties' arguments in later briefing. The Court DENIES AS MOOT Petitioners' motion for temporary restraining order, ECF 1-4. The parties are directed to confer and submit a proposed briefing schedule for the Petition and any preliminary injunction motion. Petitioners shall promptly serve a copy of this Order upon Respondents and the United States Attorney for the District of Oregon at usaor.civilhabeas@usdoj.gov. The Court Clerk shall also serve a courtesy copy on the United States Attorney.

**IT IS SO ORDERED.**

DATED this 4th day of August, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge